J-A22016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
          :                PENNSYLVANIA
          :
        v.          :
          :
          :
ROBERT FLYNN          :
          :
      Appellant     :   No. 804 WDA 2022

Appeal from the Judgment of Sentence Entered June 9, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006288-2021

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:         **FILED: DECEMBER 11, 2023**

Appellant, Robert Flynn, appeals from the judgment of sentence entered

on June 9, 2022, following his jury trial convictions for aggravated indecent

assault, indecent assault, unlawful restraint, and stalking.[1]  We affirm.

The trial court summarized the facts of this case as follows:

[O]n August 4, 2021, the [adult female] victim in this case decided
to go for a walk.  At the time of the incident, she was pregnant.
She left her home on the North[side] of the City of Pittsburgh and
started to walk along the River Trail.  During that walk she was
grabbed from behind.  Her assailant grabbed her buttocks multiple
times and [tackled] her to the ground.  [The victim] turned around
as she was grabbed but she did not recognize her attacker.  Her
attacker pulled her pants down and while the victim was on her
back he reached between her buttocks and touched her in her
vaginal area with his fingers.  The victim began screaming and
kicking.  She believed that she was going to be raped.  While she
was screaming and kicking, [Appellant] got up and fled the area.

---

[1] 18 Pa.C.S.A. §§ 3125(a)(1), 3126(a)(1), 2902(a)(1), and 2709.1(a)(1),
respectively.

> The victim got up, dressed and took a photograph of [Appellant] with her cellular [tele]phone as he fled. She then called 911 and police officers responded. Based on the photograph and the description provided by the victim, [Appellant] was apprehended nearby very shortly thereafter. The victim identified [Appellant] as her attacker.

Trial Court Opinion, 12/2/2022, at 1-2.

Appellant proceeded to a jury trial that commenced in February 2022. Prior to trial on December 27, 2021, however, the Commonwealth filed notice of its intention to present evidence of other crimes pursuant to Pa.R.E. 404(b). Specifically, the Commonwealth sought to introduce evidence of Appellant's prior convictions involving five different victims to establish a common scheme, *modus operandi*, intent, identity and absence of mistake or accident. Following a pretrial hearing, the trial court, pursuant to Rule 404(b), agreed to admit evidence of Appellant's prior convictions but limited the Commonwealth to only two prior incidents. At trial, two witnesses testified that Appellant pled guilty to various crimes for sexually assaulting them in 2014 by grabbing them from behind, pulling down their pants, and groping their buttocks before fleeing. The incidents happened along the same river trail in Pittsburgh and at a similar time of day. Following trial, the jury convicted Appellant of the aforementioned crimes. On June 9, 2022, the trial court imposed a mandatory term of 25 to 50 years of imprisonment for

aggravated indecent assault, with no further penalty for the remaining charges. This timely appeal resulted.[2]

On appeal, Appellant presents the following issue[3] for our review:

Did the trial court err when it permitted the Commonwealth [] to introduce evidence about Appellant's two prior convictions [because such evidence] was not admissible as a signature crime showing identity, and [where the] probative value outweighed its potential for prejudice?

Appellant's Brief at 3.

In sum, Appellant posits:

Appellant's jurors heard [from two prior victims] – the first two witnesses in the case – who discussed their interactions with Appellant over six-and-a-half years before. The first reported that she had, on September 2, 2014, been running on the same walking/running trail [as the victim in this case] when Appellant snuck up behind her, pulled her running shorts to the ground, and groped her buttocks before running off. (Appellant pled guilty to that crime.) A second witness testified that, almost four months later, on December 29, 2014, Appellant had snuck up behind her as she was out for a walk, pulled down the trousers and undergarments that she wore, inserted his finger into her intergluteal cleft, and groped her buttocks before running off. (Appellant pled guilty to that crime too.) Appellant objected to

---

[2] Appellant filed a notice of appeal on July 8, 2022. On July 18, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely after an expressly granted extension. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 2, 2022.

[3] We note that in his Rule 1925(b) statement Appellant also averred that the trial court erred by imposing a mandatory sentence pursuant to 42 Pa.C.S.A. § 9718.2. Appellant has failed to develop this issue on appeal and, therefore, we find it waived. *Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

the introduction of this testimony prior to trial, to no avail. He now challenges that ruling in this appeal.

Appellant's contention is twofold. First, he submits that the evidence was not admissible as proof of identity since his prior crimes did not constitute signature crimes. The mere fact that there were some similarities between Appellant's prior conduct and the crimes for which he stood trial does not establish the requisite *modus operandi* to permit admission.[4] The blunt and sorry fact is that men, all over the country, oftentimes assault women in this manner. The[y] grab them as they are out running or walking, they pull at or remove or tear at their clothing, and they grab their private areas. To say that a man [who] has done this in the past has committed a signature crime is to treat the commonplace as uncommon. For prior crimes evidence to be admissible as a signature crime, the conduct of the perpetrator must be unique to that sort of crime. The mere fact that he's engaged in that sort of conduct before is merely propensity evidence – precisely what Rule 404 excludes.

Moreover, even if the evidence of Appellant's prior assaults qualified as evidence of a signature style, the probative value of the evidence did not outweigh its potential for prejudice. Prior crimes evidence is itself inherently prejudicial, and that danger is heightened when, as here, the crime charged is the same, or nearly the same as, the prior conviction.

Appellant submits that he should be granted a new trial.

*Id.* at 14-15.

We adhere to the following standards:

---

[4] Appellant emphasizes the dissimilarities between the three cases. For example, Appellant claims that in this case the victim was walking, not running like one of the prior victims. Appellant's Brief at 23. Appellant further claims that this case took place in the summer, whereas one of the other victims was assaulted in the winter. *Id.* Finally, Appellant posits that "in this case, the victim's labia was digitally penetrated, whereas with [one of the testifying prior victims] it was her intergluteal cleft that was digitally assaulted, and with [the other testifying witness] no digital penetration occurred at all." *Id.*

When reviewing a claim concerning the admissibility of evidence, and specifically evidence of other crimes or bad acts by a defendant, we note:

> The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion. In determining whether evidence should be admitted, the trial court must weigh the relevant and probative value of the evidence against the prejudicial impact of that evidence. Evidence is relevant if it logically tends to establish a material fact in the case or tends to support a reasonable inference regarding a material fact. Although a court may find that evidence is relevant, the court may nevertheless conclude that such evidence is inadmissible on account of its prejudicial impact.

An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Further, an abuse of discretion may result where the trial court improperly weighed the probative value of evidence admitted against its potential for prejudicing the defendant. When a trial court indicates its reason for its ruling, our scope of review is limited to an examination of that stated reason.

Jurisprudence regarding the admission of other crimes and bad acts is as follows:

> Evidence of distinct crimes is not admissible against a defendant being prosecuted for another crime solely to show his bad character and his propensity for committing criminal acts. *See* Pa.R.E. 404(b)(1). However, evidence of other crimes and/or violent acts may be admissible in special circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character.

These other purposes include, *inter alia*, proving the identity of the person charged with the commission of the crime on trial.

Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant. Required, therefore, is

- 5 -

such a high correlation in the details of the crimes that proof that a person committed one of them makes it very unlikely that anyone else committed the others.

In comparing the methods and circumstances of separate crimes, a court must necessarily look for similarities in a number of factors, including: (1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims. Remoteness in time between the crimes is also factored, although its probative value has been held inversely proportional to the degree of similarity between crimes.

*Commonwealth v. Weakley*, 972 A.2d 1182, 1188–1189 (Pa. Super. 2009) (internal case citations, quotations, and original brackets omitted). "[T]he importance of a temporal nexus between crimes declines as the similarity of the crimes increases." *Id.* at 1190. Furthermore, we have opined that "Rule 404(b)(1) and relevant jurisprudence shows the other crime need not match every fact and circumstance of the charged crime before it may be used to prove identity." *Id.* Finally, we have stated:

The inquiry into admissibility of "other crimes" evidence does not end with confirming a permissible 404(b) purpose such as proving identity, but proceeds to ask whether the probative value of the "other crimes" evidence outweighs its presumptive prejudice. In conducting the probative value/prejudice balancing test, courts must consider factors such as the strength of the "other crimes" evidence, the similarities between the crimes, the time lapse between crimes, the need for the other crimes evidence, the efficacy of alternative proof of the charged crime, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 1191 (internal citations and most quotations omitted). "Additionally, [this Court has held that] when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the

- 6 -

proffered evidence.... Jurors are presumed to follow the trial court's instructions." ***Commonwealth v. Tyson***, 119 A.3d 353, 360 (Pa. Super. 2015) (*en banc*), *citing* ***Commonwealth v. Hairston***, 84 A.3d 657, 666 (Pa. 2014) (holding extraneous offense of arson was admissible under Rule 404(b) in prosecution for murder; trial court's instruction on how arson evidence should be considered minimized likelihood that arson evidence would inflame jury or cause it to convict defendant on improper basis).

In this case, the trial court explained that it "permitted the Commonwealth to introduce the challenged evidence because it believed that the evidence [was] probative of [Appellant's] identity because, by inference, [Appellant] committed the prior assaults under vastly similar circumstances." Trial Court Opinion, 12/2/2022, at 4-5. More specifically, the trial court found:

> The Commonwealth sought to admit testimony regarding five prior incidents in which [Appellant] attacked and assaulted females under circumstances very similar to the incident for which [Appellant] was charged in this case. [The trial c]ourt believed that the admission of all five [prior victims] was overly prejudicial and it limited the Commonwealth to the admission of only two of the prior incidents. The testimony of the two permitted witnesses demonstrated that [Appellant's] prior attacks occurred in the same geographical area the attack in this case occurred, the Northside section of the City of Pittsburgh. In each instance, [Appellant] grabbed the victim from behind, pulled the victims' shorts down and touched the victims' buttocks. [Appellant] then fled each scene. This evidence was markedly similar to the circumstances of the instant offense and it was probative of the identity of [the] assailant in this case. [The trial c]ourt read a cautionary instruction to the jury advising that the jury could not consider this evidence as propensity evidence and that the permissible purpose for the admission of evidence was to determine if the identification of [Appellant] was accurate. [The trial c]ourt believe that the admission of the evidence was proper.

*Id.* at 5.

Upon review of the certified record and applicable law, we agree with the trial court's assessment. Here, in examining the facts of the previous assaults with the instant matter, all of the occurrences share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of Appellant. The trial court compared the methods and circumstances of the separate crimes, and noted similarities in a number of factors, including the manner in which the crimes were committed, the location of the incidents, and the type of victims. Appellant attacked unaware female strangers from behind, while they were walking or running alone along the River Trail on Pittsburgh's Northside. The assaults all took place during the daytime, and, in each instance, Appellant pulled the victims' pants down and groped them from behind before running away. Moreover, we reject Appellant's attempt to show slight factual distinctions between the offenses, because the other crimes need not match every fact and circumstance of the charged crime before being deemed admissible to prove identity. Furthermore, upon review, the trial court weighed the probative value of the Rule 404(b) evidence with the potential for prejudice as required. Ultimately, the court denied the Commonwealth's request to present five prior victims as witnesses at trial and limited the testimony to just two prior victims. The trial court also instructed the jury that the evidence was presented for the limited purpose of confirming Appellant's identity and we presume that the jury followed the trial court's directives. Hence, for all of the foregoing reasons,

we conclude that the trial court did not abuse its discretion or err as a matter of law in permitting Rule 404(b) evidence of other crimes. Accordingly, Appellant is not entitled to relief on his sole appellate claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/11/2023